[Civ. No. 17817.   Second Dist., Div. One.   Mar. 5, 1951.]

JOE M. MARKS, Appellant, v. J. B. ROWLEY, Respondent.

Samuel Schekman for Appellant.

M. Lewis Lehman for Respondent.

DRAPEAU, J.—On September 25, 1948, plaintiff, a licensed real estate agent, telephoned defendant for permission to list for sale a motel owned by him.   Defendant agreed to give plaintiff an open listing.   Thereupon, plaintiff mailed to him the Los Angeles Realty Board's official printed form of "exclusive listing" for sale of realty.   Before doing so, plaintiff had altered this form by adding at the top the words "Open

Listing'' and by striking the word ''exclusive'' from the body of the instrument where it appeared twice. This printed form so altered was accompanied by a note from plaintiff, to wit: ''Dear Mr. Brawley: Please sign open listing, both copies enclosed. Return original. I will hold price firm. . . . Please keep me advised of any developments, and I will do the same to you.''

Upon receipt, defendant signed the listing, but before returning it to plaintiff he struck out the phrase having reference to a termite clearance.

Those portions of the printed form which appointed plaintiff the irrevocable agent of defendant from September 25th to November 30th, 1948, and agreed to pay him a 5 per cent commission ''If a purchaser ready, willing and able to purchase . . . said property is procured by said agents or by anyone else including myself,'' were left unchanged.

During the period covered by the listing, the motel was sold by another agent to whom defendant paid a commission.

By the instant action, plaintiff sought to recover a commission of 5 per cent on the sale, based on the terms of the listing agreement.

The trial court found that defendant was to pay plaintiff a commission only in the event plaintiff procured a buyer ready, willing and able to buy the motel prior to November 30th, and prior to its being otherwise sold; that it was not understood or agreed that ''if a purchaser was procured by plaintiff or anyone else, including the defendant'' during the terms of the agency, plaintiff was to receive a commission; that the buyer of the property was not obtained in any way through the efforts of plaintiff, and that he did not at any time obtain a buyer ready, willing and able to purchase the motel.

From a judgment in favor of defendant, plaintiff appeals.

''The sole question'' asserts the appellant, ''is simply this. Where words used in a listing are clear and unequivocal and state that the owner will pay the agent five per cent (5%) even if the owner sells the property himself, can the court completely disregard such words and hold that the two words 'open listing' are controlling and supersede all other material in the body of the agreement.''

■ It is quite obvious from an examination of the agreement, which was introduced in the lower court as an exhibit, that the parties attempted to alter a printed form of exclusive listing into an open listing agreement. And that in so doing, they failed to delete the words upon which appellant bases

his claim: That he should receive a commission if a purchaser were procured by him or by anyone else, including the respondent.

Section 1651 of the Civil Code appears to provide a reasonable method for interpreting the instant contract:

"Where a contract is partly written and partly printed, or where part of it is written or printed under the special directions of the parties, and with a special view to their intention, and the remainder is copied from a form originally prepared without special reference to the particular parties and the particular contract in question, the written parts control the printed parts, and the parts which are purely original control those which are copied from a form. And if the two are absolutely repugnant, the latter must be so far disregarded."

Respondent testified that when appellant "asked me for the listing, I said he could have an open listing—that other brokers had it. I could not give him anything else but an open listing."

The Reference Book and Guide (1948 Rev.) published by the State Division of Real Estate was introduced in evidence. On page 64 of that work appears the following definition of an open listing: "An open listing is a listing general in form which merely sets forth the statement as to the condition of the property, its size, location, and the amount desired for the sale price, and it may be with or without a time limit, and with or without notice to the brokers in case of sale. An open listing, therefore, does not require the seller to notify any of the brokers with whom the property is listed, in order to prevent liability of paying a second commission, as the sale of the property itself automatically cancels the listing. The commission in an open listing goes to the broker who first finds a buyer. In the event the owner finds a buyer the owner is not obligated to pay a commission to a broker who later secures a buyer."

It is conceded by both sides that this was to be an open listing. In any event, the written words to that effect in the document are controlling, and the printed matter therein contained which is repugnant to the definition of an open listing agreement must be disregarded.

There is no merit in appellant's argument that the Reference and Guide Book of the State Real Estate Division was improperly admitted in evidence. That particular division of the state government administers the Real Estate Law

(Bus. & Prof. Code, §§ 10000-11658), including the licensing of real estate agents and brokers.

In *Estate of Atwell*, 85 Cal.App. 2d 454, 468 [193 P.2d 519], where the construction given by the State Controller to certain sections of the state Inheritance Tax Law was being considered, the court stated: "The construction so given the law, while not controlling, is most persuasive of the correctness of our conclusion."

For the reasons stated, the judgment is affirmed.

White, P. J., and Hanson, J. pro tem., concurred.